## Case No. 10,617.

### The OTTAWA.

[1 Lowell, 274.] [1]

District Court, D. Massachusetts. July. 1868.

SALVAGE — WHO MAY BE SALVORS — THE FUND — LIGHT-HOUSE KEEPER — OWNERS SHARE SALVAGE WITH CREW — OWNER OF OXEN USED IN SALVAGE SERVICE.

1. It is a general rule in salvage that all persons who give any personal assistance in saving the property are salvors. Another general rule is, that the ship, cargo, freight, &c., saved make one fund or subject of salvage.

2. Thus, where A. discovered a wreck, and with two others whom he procured took active and successful measures towards saving the spars, tackle, and rigging, and several other persons afterwards exerted themselves in the same service, and these others on the next day went on board the disabled vessel, or on board the vessels which had come to her assistance, and did whatever was found necessary, the vessel being actually saved by a steamer, held, that A., who staid on shore the second day, could not be decreed a salvor of the tackle, spars, and rigging only, but was entitled to come in with the others against the common fund, he bringing into the fund the value of the spars, &c., which had been set apart for his benefit.

3. The keeper of a light-house is under no obligation to render salvage services gratuitously.

4. A person whose oxen are used in a salvage service does not thereby become a salvor. Owners of vessels whose crews perform salvage service share the salvage compensation, not because their vessels are used, but as an encouragement to permit their use or the use of the men.

The brig Ottawa with a valuable cargo was anchored in a dangerous position, in Vineyard Sound, near the breakers at the island of Cuttyhunk, on the night of 7–8 April, 1868, and in a very severe gale was partly dismasted, and was abandoned by her crew. S. A. Smith, keeper of the light-house on the island, discovered a part of her tackle and

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

rigging floating near the shore, at about one o'clock that night, and attempted to give notice to Captain Church, a man of skill and experience in such matters; but he was away from home. He did notify two men, and with them made the rigging fast to the shore, so that it could be afterwards saved. Later in the day several other inhabitants of Cuttyhunk gave assistance, and by their labor, and that of Captain Church's oxen, the floating materials were all dragged on shore, and fully and finally saved. This was Wednesday; and the gale continued all that day. Two of the libellants went in a pilot-boat to New Bedford, and engaged a steamer, which tried in vain to reach the brig that day, but did so at an early hour on Thursday morning, when most of the libellants went on board either of the brig, the steamer, or the pilot-boat; and the anchor was weighed, and the brig was towed safely to New Bedford, and repaired.

The tackle, spars, and rigging which had been saved from the water were stored in Captain Church's barn, and were by him restored to the agent of the underwriters, who paid him one-half their value, namely, one hundred and fifty dollars. Captain Church rendered no personal services in saving any of the property. Mr. Smith did not go on board the brig, or render any personal services after Wednesday. All the persons engaged in the service, excepting Smith, filed a libel against the brig and her cargo, April 18, 1868, and the warrant was made returnable May 1. Before the return day, but after due claim had been made, the underwriters agreed with the salvors that five thousand five hundred dollars should be paid in full, with costs; but before the money was paid they were notified that Mr. Smith claimed to be a salvor. Thereupon the money was paid to the libellants' proctor, Mr. Crapo, upon the agreement that he should retain it until Mr. Smith's rights were ascertained and disposed of. The vessel and cargo had already been released, and the libel was dismissed by consent. Some negotiations were had, but no result was reached; and on the 18th of June the original libellants applied by petition to this court, reciting generally the above proceedings and agreements, and averring that Smith was not a salvor, and asking that he might be cited in to show cause why distribution should not be made among the original libellants, and that Mr. Crapo might be cited to show why he should not pay over the money. Upon the filing of this petition, the order dismissing the libel was rescinded by agreement of the libellants and the claimants, leaving open the question of amount of salvage as well as the distribution. On the 16th of July, which was a time agreed on by the parties, Smith appeared and filed a statement of his services in the form of an answer to the petition, and a hearing was had, at which it was agreed that the amount already paid was the just and true amount of salvage; and evidence and arguments were heard on the question whether Smith and Church were salvors.

T. M. Stetson, for Smith and Church.

W. W. Crapo, for original libellants.

LOWELL, District Judge. The amount of salvage has been agreed, and the particulars of the distribution are not submitted to me; but the questions which are submitted are questions of distribution. It is the general rule in salvage that all persons aiding in the service, however slightly, are salvors. The exceptions are when the services are insignificant and hardly amount to personal exertion, such as sending other men to work, and the like. This case appears to fall within the general rule. Mr. Smith performed some part of the work, and aided in giving the notice and information. Although he did not go off to the vessel on the second day, and gave no personal assistance in saving her, but only in the rescue of her tackle and apparel, yet the evidence shows clearly that many of those who did go from the shore, and who are properly joined in the libel, were not needed, and that several of them in fact performed no work at all, excepting such as Smith did in saving the materials. Indeed, there was little to be done by the men from Cuttyhunk on the second day, except to get up the anchor, and get out and make fast the tow-line.

The great merit of the salvage, so far as the inhabitants of the island are concerned, was in getting the news to the steamer promptly, and procuring her assistance. But only two of the salvors were actually engaged in this service.

There is some reason to suppose that the ill feeling may have arisen out of an attempt on the part of Smith to monopolize the benefits of the discovery he had made. If he made the attempt, it was not successful. The others aided during Wednesday, and his services during that day entitle him to be considered one of the salvors. The objection that he is in the employment of the government cannot avail. The vessel saved was not the property of the government; and no law or order has been shown requiring the keepers of light-houses to render gratuitous services beyond the line of their ordinary employment as such keepers. Such a law does apply under some circumstances to the officers and crews of our revenue-cutters, whose duty includes, by statute, certain services of this nature.

I find that the property saved was the vessel and her tackle; that the whole must be considered a common fund and a common service, and that the libellants are not justified in severing them and proceeding against the vessel alone, without mention of the articles belonging to her which were saved on and near the shore, and by that suppression making a libel which is substantially untrue.

The money received for the tackle must be brought into the common fund, and Smith must be admitted as one of the salvors. I repeat that there is no question before me concerning the amounts which the several salvors shall have.

Captain Church, whose oxen were used, is entitled to a fair compensation for their use; but they cannot be salvors, nor make him one. Vessels are the only exception to the rule that the supply of tools or other things does not constitute their owner a salvor: The Charlotte, 3 W. Rob. Adm. 72; The Vine, 2 Hagg. Adm. 1. This exception stands on grounds of public policy; and the salvage compensation does not depend on any actual use of the vessel. It is a premium for permitting the service to be performed by the crew of the vessel, or by the vessel itself, as the case may be.